## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                                 Bankr. No. 18-60636
                                                                       Chapter 11

Cormican's, Inc.,

        Debtor

## PLAN OF REORGANIZATION
### July 29, 2019

Kevin T. Duffy, attorney # 134 600
Duffy Law Office
P.O. Box 715
Thief River Falls, MN 56701
218-681-8524 (T)
218-681-8525 (F)
**Attorney for Debtor**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I. | SUMMARY …………………………………………………………………………… | 3 |
| ARTICLE II. | TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS …………………………………………………………. | 3 |
| ARTICLE III. | TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN ………………… | 4 |
| ARTICLE IV. | ALLOWANCE AND DISALLOWANCE OF CLAIMS; RESERVATION OF ALL RIGHTS, CLAIMS, AND ACTIONS ……………………………………………… | 7 |
| ARTICLE V. | PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES … | 8 |
| ARTICLE VI. | MEANS FOR IMPLEMENTATION OF THE PLAN ……………………………… | 8 |
| ARTICLE VII. | MEANS FOR IMPLEMENTATION OF THE PLAN ……………………………… | 9 |
| ARTICLE VIII. | CONFIRMATION, DISCHARGE AND MODIFICATION OF THE PLAN ……… | 10 |
| ARTICLE IX. | OTHER PROVISIONS ……………………………………………………………… | 12 |

# ARTICLE I
# SUMMARY

This Plan of Reorganization (the "Plan") is proposed by Cormican's, Inc. (the "Debtor") under Chapter 11 of the Bankruptcy Code (the "Code") and sets forth the terms on which certain creditors will be paid**.**

All creditors should refer to Articles II through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors has been circulated with this Plan.

**Your rights may be affected. The payments made pursuant to this Plan will be in full and final satisfaction of your claim. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE II
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
# U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

2.01    Unclassified Claims.    Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

2.02    Administrative Expense Claims.    Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of this Plan (as defined in Article VIII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Professional Fees | $5,000.00 (as of July 29, 2019) | There shall be additional attorney's fees and costs incurred and a separate application for approval of those fees and costs shall be applied for by Duffy Law Office. The $5,000.00 of professional fees through July 29, 2019 shall be paid in full on the effective date of the plan, or in accordance with a separate agreement or according to Court Order if such fees are not approved by the Court on the effective date of the plan. |

3

| | | |
|---|---|---|
| Office of the U.S. Trustee Fees | $1,000.00 | Paid in full on the Effective Date of the Plan |
| TOTAL | $6,000.00 | |

2.03    Priority Tax Claims. Each holder of a priority tax claim will be paid in accordance with the following:

a.    *Internal Revenue Service ("IRS")*. As far as the Debtor is aware at this time, there are no claims filed by the IRS in this case as of the Claims Bar Date. It should be noted that the Debtor has filed an extension to file its 2018 tax return. That return will be filed in the near future. Because of the quarterly taxes paid by the Debtor, the Debtor does not expect that there will be any taxes owed to the IRS as a result of filing its 2018 tax return. The Debtor is current on all of its quarterly taxes as well as 941 taxes.

b.    *Minnesota Department of Revenue*. The Minnesota Department of Revenue has not filed a claim. The Debtor is not aware of any claim filed or unfiled by the Minnesota Department of Revenue. The Debtor is up to date on its tax payments to the State of Minnesota.

2.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date. After confirmation, the Debtor shall submit quarterly disbursement reports to the U.S. Trustee each month (or portion thereof) until the Chapter 11 case is closed, dismissed, or converted. Such reports shall be in the format prescribed by the U.S. Trustee. After the Effective Date of this Plan, Trustee will be allowed to administratively close the pending bankruptcy case and, after said closure, no longer have reporting requirements to the U.S. Trustee or obligations to pay quarterly fees to the U.S. Trustee based on monthly operating reports.

2.05    Tax Returns. The Debtor will timely file and pay all federal and state income tax returns as said returns come due post-petition. As stated above, this will include the Debtor's filing of the 2018 tax return.

**ARTICLE III**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

Secured Creditor Class:

3.01    Class 1: Secured claim of Unity Bank North, loan number ending in 8119.

**Description.** Unity Bank holds a debt in the amount $9,678.62 as of July 25, 2019 with a daily interest accrual rate of $1.46 per day with an interest rate of 5.5% which is secured with a lien on equipment and machinery owned by the Debtor. This loan is guaranteed by Brandon Cormican. This claim is fully secured.

**Treatment.** The Debtor plans on having an appraisal prepared of the three graders and two snowplow trucks which are secured in favor of Unity Bank North. The appraisal shall be done by Jason Leas of Best Trucks in Crookston, Minnesota. Once the appraisal is obtained, Brandon Cormican will pay to Unity Bank North the appraised value of these five vehicles and equipment. In the event that Unity Bank North wants to secure an independent appraisal of its own, it should be granted the right to do so and the parties will attempt to negotiate a purchase price for Brandon Cormican. In the event that they cannot reach an agreement, Unity Bank North or the Debtor shall have the right to bring the matter back before the Court and have a determination made on the fair market value of these five pieces.
    There are other remaining items of equipment secured in favor of Unity Bank North. Those remaining assets shall be collected and the Debtor shall work with Ron McKercher of McKercher Auction Sales in St. Hilaire, Minnesota for purposes of setting up an auction to liquidate any and all remaining equipment and machinery not listed above secured in favor of Unity Bank North. The net proceeds from the auction sale shall be applied to the underlying debt of Unity Bank North. To the extent that this loan is under secured, Unity Bank North shall have the right to pursue non-Bankruptcy Court remedies against Brandon Cormican as the guarantor of this loan.

      3.02    Class 2: Secured claim of Unity Bank North, loan ending in 2412

**Description.** Unity Bank holds a debt in the amount $105,424.48 as of July 25, 2019 with a daily interest accrual rate of $16.23 per day with an interest rate of 5.62% which is secured with a lien on equipment and machinery owned by the Debtor. This loan is guaranteed by Dale and Sandra Cormican and a second mortgage on their homestead. This claim is fully secured.

**Treatment.** The Debtor plans on having an appraisal prepared of the three graders and two snowplow trucks which are secured in favor of Unity Bank North. The appraisal shall be done by Jason Leas of Best Trucks in Crookston, Minnesota. Once the appraisal is obtained, Brandon Cormican will pay to Unity Bank North the appraised value of these five vehicles and equipment. In the event that Unity Bank North wants to secure an independent appraisal of its own, it should be granted the right to do so and the parties will attempt to negotiate a purchase price for Brandon Cormican. In the event that they cannot reach an agreement, Unity Bank North or the Debtor shall have the right to bring the matter back before the Court and have a determination made on the fair market value of these five pieces.
    There are other remaining items of equipment secured in favor of Unity Bank North. Those remaining assets shall be collected and the Debtor shall work with Ron McKercher of McKercher Auction Sales in St. Hilaire, Minnesota for purposes of setting up an auction to liquidate any and all remaining equipment and machinery not listed above secured in favor of Unity Bank North. The net proceeds from the auction sale shall be applied to the underlying debt of Unity Bank North. This loan is guaranteed by Sandra and Dale Cormican individually as well as property belonging to them as individuals. To the extent that this loan is under secured, Unity Bank North shall be granted the right to pursue its non-Bankruptcy remedies against Dale and Sandra Cormican and/or the property which they own individually.

    3.03    Class3 : Secured claim of Unity Bank North, loan ending in 2413

**Description.** Unity Bank holds a debt in the amount $196,318.27 as of July 25, 2019 with a daily interest accrual rate of $32.72 per day with an interest rate of 6% which is secured with a lien on equipment and machinery owned by the Debtor. This loan is guaranteed by Dale and Sandra Cormican and a second mortgage on their homestead. This claim is fully secured.

**Treatment.** The Debtor plans on having an appraisal prepared of the three graders and two snowplow trucks which are secured in favor of Unity Bank North. The appraisal shall be done by Jason Leas of Best Trucks in Crookston, Minnesota. Once the appraisal is obtained, Brandon Cormican will pay to Unity Bank North the appraised value of these five vehicles and equipment. In the event that Unity Bank North wants to secure an independent appraisal of its own, it should be granted the right to do so and the parties will attempt to negotiate a purchase price for Brandon Cormican. In the event that they cannot reach an agreement, Unity Bank North or the Debtor shall have the right to bring the matter back before the Court and have a determination made on the fair market value of these five pieces.

    There are other remaining items of equipment secured in favor of Unity Bank North. Those remaining assets shall be collected and the Debtor shall work with Ron McKercher of McKercher Auction Sales in St. Hilaire, Minnesota for purposes of setting up an auction to liquidate any and all remaining equipment and machinery not listed above secured in favor of Unity Bank North. The net proceeds from the auction sale shall be applied to the underlying debt of Unity Bank North. This loan is guaranteed by Sandra and Dale Cormican individually as well as property belonging to them as individuals. To the extent that this loan is under secured, Unity Bank North shall be granted the right to pursue its non-Bankruptcy remedies against Dale and Sandra Cormican and/or the property which they own individually.

    3.04    Class 4: Secured claim of Ford Motor Credit Company

**Description.** Ford Motor Credit has a fully secured claim on a F-350 Ford truck. It is estimated that the debt on this truck is equal to the fair market value and there is no equity in this truck. Ford Motor Credit Company filed a secured claim in this case for $57,114.88 as of November 21, 2018.

**Treatment.** That claim has certainly been reduced since payments have been made by the Debtor on the loan. The value of the truck is also depreciated with usage. Dale Cormican guarantees this debt and he will simply take steps to have the truck transferred into his name and continue making the monthly payments.

    3.05    Class 5: Secured claim of Citizens One

**Description.** Citizens One has a claim secured by a F-350 Ford truck. Citizens One did not file a proof of claim in this case, but the Debtor is not disputing the fact that it has a debt of approximately $55,000 secured on the F-350 truck which, as far as the Debtor knows, is in the possession of John Kaliman who the Debtor believes is living in the Spokane, Washington area.

**Treatment.** The Debtor has obtained an Order in this Court for the turnover of the truck by John

Kaliman to the Debtor and that has not yet happened. The Debtor continues to work with Citizens One to try and locate this vehicle. If and when the truck is located, it shall be turned over to Citizens One for liquidation and any net proceeds will be applied to the underlying debt of Citizens One. It is anticipated that the amount received from the liquidation will be nowhere near sufficient to pay off the debt to Citizens One. In the event that this happens, any remaining unpaid balance to Citizens One shall be treated as an unsecured claim.

Unsecured Creditor Class:

    3.19    Class 19: General Unsecured Claims

**Description.**  The unsecured creditors in this case have claims totaling $1,096,514.35 according to the Debtors Schedule F. However, the unsecured creditors filing claims in this case only totals $125,030.57.

**Treatment.**  Because this is a liquidating liquidation plan, there will be no payments to the unsecured creditors in this case.

## ARTICLE IV
## ALLOWANCE AND DISALLOWANCE OF CLAIMS;
## RESERVATION OF ALL RIGHTS, CLAIMS, AND ACTIONS

    4.01    <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:  (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.  Claims are allowed in the amounts set forth in Plan Article IV.

    4.02    <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

    4.03    <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

    4.04    <u>Reservation of Rights, Claims and Actions</u>.  The Debtor reserves all of its rights, at law or in equity, not otherwise specifically modified by this Plan, to commence adversary proceedings, or take any other legal action allowed by the Bankruptcy Code, or other applicable law.  The failure of the Debtor to specifically list any claim, cause of action, right of action, suit or proceeding in the Bankruptcy Schedules, the Disclosure Statement, or in the Plan does not, and will not be deemed to constitute a waiver or release by the Debtor of any avoidance action.  Pursuant to 11 U.S.C. §§ 105 and 1123(b)(3), the Debtor will have the full power, authority, discretion and standing to prosecute, settle, release, compromise, enforce, or otherwise resolve all avoidance actions, with the net proceeds

derived therefrom, if any, being distributed to the holders of allowed claims in Class 2 in accordance with this Plan.

## ARTICLE V
## PROVISIONS FOR EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

5.01    Assumed Executory Contracts and Unexpired Leases.   The Debtor has a lease with Wallwork Financial Corporation covering a 2014 Kenworth T680 Semi-tractor with serial number ending in 7984; a second lease with Wallwork Financial Corporation covering a 2013 Great Dane Reefer Semi-trailer, serial number ending in 2252; a third lease with Wallwork Financial Corporation covering a 2017 Kenworth T680 Semi-tractor with serial number ending 0756; a fourth lease with Wallwork Financial Corporation covering a used 2015 Kenworth T600 Semi-tractor with serial number ending in 0654 and a fifth lease with Wallwork Financial Corporation covering a 2014 Great Dane Reefer Semi-trailer with serial number ending in 2582. Even though all of these leases are in the name of the Debtor, the Semi-tractors and trailers have been operated over the past several years by Cormican Logistics, LLC, a business owned by Brandon Cormican, son of Dale and Sandra Cormican. There is no equity in these leases since they are not disguised installment sales contracts. The Debtor will take the steps to assign these leases to Cormican Logistics, LLC. In the event that there is an objection by Wallwork Financial Corporation to such an assignment, Wallwork Financial Corporation and/or the Debtor shall retain the right to have a hearing on this issue before the Bankruptcy Court.

5.02    Rejected Executory Contracts and Unexpired Leases. The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 5.01 above, or before the date of the Order confirming this Plan, upon the Effective Date of this Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

6.01    Continued Operation.  Until the buyout of the three graders and two snowplow trucks by Brandon Cormican and the assignment of the five leases with Wallwork Financial Corporation, payments will be made by the Debtor from the cash flow from the continued operation of the Debtor's business.

6.02    Payments Under the Plan.  Payments under this Plan will be made by check, mailed with first class postage prepaid, to the claimant at the address listed on its Proof of Claim, or if no Proof of Claim has been filed by the date of the hearing on confirmation, to the address listed on the Debtor's bankruptcy schedules. Questions concerning payments should be addressed to Kevin T. Duffy at (218) 681-824 or duffylaw@mncable.net.

6.03    Timing of Payments.  Payments or distributions under this Plan will be made as soon as practicable on or following the Effective Date, except as otherwise specified in this Plan.

6.04	Unclaimed Payments.  In the event a payment is returned to the Debtor unclaimed, with no indication of the claimant's forwarding address, the Debtor will hold such payment for a period of six (6) months from the date of return. If not claimed by the claimant by the end of that period, the payment shall be retained by the Debtor to the extent all Class 2 creditors have been paid in full.

6.05	Untimely Claims.  Claims not timely filed or claims that are scheduled as disputed, contingent, or unliquidated on which a claim has not been timely filed will not participate in distributions under this Plan and will be discharged under 11 U.S.C. § 1141(d), unless otherwise ordered by the Bankruptcy Court.

6.06	Section 1146 Exemption from Certain Taxes and Fees.  Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property in contemplation of, in connection with, or pursuant to this Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct and be deemed to direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (1) the creation and recordation of any mortgage, deed of trust, lien or other security interest; (2) the making or assignment of any lease or sublease; (3) any restructuring transaction authorized by this Plan; or (4) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan, including: (a) any merger agreements; (b) agreements of consolidation, restructuring, disposition, liquidation or dissolution; (c) deeds; or (d) assignments executed in connection with any transaction occurring under this Plan.

## ARTICLE VII
## GENERAL PROVISIONS

7.01	Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

a.	Allowed Claim means a Claim against the Debtor to the extent that proof of such claim was timely filed or deemed filed, or late filed (after notice and opportunity for hearing given to counsel for the Debtor) with leave of the Bankruptcy Court and which is allowed by a final order of the Bankruptcy Court.

b.	Allowed Secured Claim are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code.  If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

c.	Filing Date is the date the Debtor's Bankruptcy Petition was filed (October 18, 2018).

9

7.02    Effective Date of Plan. The Effective Date of this Plan is thirty (30) days following the date of the entry of the Order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04    Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Minnesota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII
## CONFIRMATION, DISCHARGE AND MODIFICATION OF THE PLAN

8.01.    Effect of Confirmation and Discharge.  Confirmation of this Plan shall constitute a complete waiver, release, and satisfaction of all claims and interests of all creditors against the Debtor, except as provided in this Plan.  Confirmation of this Plan does not discharge any debt provided for in this Plan until the Effective Date of this Plan when completion of all payments contemplated by this Plan will be made.  The discharge of the Debtor shall be effective as to each claim, regardless of (i) whether a Proof of Claim was filed, (ii) whether the claim is an Allowed Claim, Allowed Secured Claim, priority claim, or (iii) whether the holder thereof votes to accept the Plan.

8.02    Revesting of Property of Estate.  Except as provided for in the Plan and the confirmation order, on the Effective Date the reorganized Debtor shall be vested with full ownership of and dominion over Debtor's' property and assets free and clear of all claims, liens, encumbrances, charges and other interests of creditors arising prior to the Filing Date.

8.03    Modifications.  The proponent may amend or modify this Plan in a manner provided for under 11 U.S.C. § 1127(a) or (b).  The proponent shall give notice of any proposed modification to the U.S. Trustee and any other parties designated by the Bankruptcy Court.  The proponent also reserve the right to make such modifications at any hearings on confirmation as are necessary to permit this Plan to be confirmed under 11 U.S.C. § 1129(b).

8.04    Releases by Holders of Claims. As of the Effective Date and except as set forth in this Plan, each holder of a Claim or Interest shall be deemed to have conclusively, absolutely,

unconditionally, irrevocably and forever, released and discharged the Debtor, the reorganized Debtor or any other party from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such person would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's restructuring, the Debtor's Chapter 11 case, the purchase, sale or rescission of the purchase or sale of any security of or claim against the Debtor or the reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any claim that is treated in this Plan, the business or contractual arrangements between any Debtor and any released party, the restructuring of claims and interests before or during the Debtor's Chapter 11 case, or the negotiation, formulation or preparation of this Plan, the Disclosure Statement, any plan supplement or related agreements, instruments or other documents, (collectively, "Released Claims"), other than Released Claims against the Debtor, the reorganized Debtor, or a released party arising out of or relating to any act or omission of that party constituting willful misconduct or gross negligence; *provided*, *however*, that this Plan shall not release the Debtor, the reorganized Debtor and the released parties from any cause of action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities and Exchange Act of 1934 (as now in effect or hereafter amended), the Securities Act of 1933 (as now in effect or hereafter amended), or other securities laws of the United States or any domestic state, city or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security.

8.05   Injunction.   FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES GRANTED IN THIS PLAN, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS PLAN.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN, THE PLAN SUPPLEMENT OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THIS PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED OR DISCHARGED ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS:  (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS;

(3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH PERSONS OR THE PROPERTY OR ESTATE OF SUCH PERSONS ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (4) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS RELEASED, SETTLED OR DISCHARGED PURSUANT TO THIS PLAN.

THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY OR ESTATE. ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND THE INTERESTS SHALL BE CANCELLED (EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS PLAN).

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTOR SHALL BE FULLY RELEASED AND DISCHARGED, AND ALL INTERESTS SHALL BE CANCELLED, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES, ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE.

## ARTICLE IX
## OTHER PROVISIONS

9.01    Requirements for Confirmation.  In order to confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of determinations concerning the Plan, including:  (i) that the Plan has classified creditor claims in a permissible manner; (ii) that the contents of the Plan comply with the technical requirements of Chapter 11 of the Bankruptcy Code; (iii) that the proponents have proposed the Plan in good faith; and (iv) that the Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promised in connection with the Plan and the bankruptcy case, as well as the identity, affiliations and compensations to be paid to the Debtor and any insiders.  The proponents intend to seek a ruling of the Bankruptcy Court at the hearing on confirmation of the Plan that all of the above conditions have been met.  In the event this Plan is not confirmed under 11 U.S.C. § 1129(a), the proponents request that this Plan be confirmed under 11 U.S.C. § 1129(b).

9.02    Voting.  The Bankruptcy Code also requires that the Plan be accepted by the requisite votes of creditors, that the Plan be feasible, and that Confirmation of the Plan be in the best interest of all creditors.  To confirm the plan, the Bankruptcy Code must find that all of these conditions are met.

Therefore, even if the creditors of the Debtor accept the Plan by the requisite votes, the Bankruptcy Court must make independent findings respecting the Plan's feasibility and whether it is in the best interests of the Debtor's creditors before it may confirm the Plan. The classification, "best interest" and feasibility requirements of confirmation are discussed in the Disclosure Statement.

9.03    Retention of Jurisdiction. The Bankruptcy Court will retain jurisdiction of the Debtor and its operations subsequent to the Confirmation Date of the Plan for the purpose of allowing Claims and hearing objections, if any, thereto, for estimating any contingent or unliquidated Claims, for conducting adversary proceedings with respect to property identified herein, including preference actions, for the purpose of determining or resolving any defaults, disputes, ambiguity, or other similar matters under this Plan, and for the purpose of approving administrative expenses.

9.04    Counterparts. This Plan may be executed in counterparts. Each such executed counterpart shall be deemed an original but shall constitute one and the same instrument. For purposes of execution of this Plan, a facsimile signature will be treated the same as an original signature.

9.05    Final Decree. After the Effective Date of this Plan, the Debtor will be allowed to administratively close the pending bankruptcy case and, after said closure, no longer have reporting requirements to the U.S. Trustee or obligations to pay quarterly fees to the U.S. Trustee based on monthly operating reports.

Dated: July 29, 2019                Signed: /s/ Sandra Cormican
                                    Sandra Cormican, President
                                    Cormican's, Inc.
                                    Proponent of Plan of Reorganization

Dated: July 29, 2019                Signed: /s/ Kevin T. Duffy
                                    Kevin T. Duffy (Atty #134 600)
                                    Duffy Law Office
                                    Attorney for Plan Proponent

REVISED 12/15

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re           Case No. **18-60636**

**Cormican's Inc.**

Debtor(s).

## SIGNATURE DECLARATION

- ☐ PETITION, SCHEDULES & STATEMENTS
- ☐ CHAPTER 13 PLAN
- ☐ VOLUNTARY CONVERSION, SCHEDULES AND STATEMENTS
- ☐ AMENDMENT TO PETITION, SCHEDULES & STATEMENTS
- ☐ MODIFIED CHAPTER 13 PLAN
- ☑ OTHER (PLEASE DESCRIBE:  Plan of Reorganization  )

I [We], the undersigned debtor(s) or authorized representative of the debtor, make the following declarations under penalty of perjury:

1. The information I have given my attorney for the electronically filed petition, statements, schedules, amendments, and/or chapter 13 plan, as indicated above, is true and correct;

2. The Social Security Number or Tax Identification Number I have given to my attorney for entry into the court's Case Management/Electronic Case Filing (CM/ECF) system as a part of the electronic commencement of the above-referenced case is true and correct;

3. **[individual debtors only]** If no Social Security Number was provided as described in paragraph 2 above, it is because I do not have a Social Security Number;

4. I consent to my attorney electronically filing with the United States Bankruptcy Court my petition, statements and schedules, amendments, and/or chapter 13 plan, as indicated above, together with a scanned image of this Signature Declaration;

5. My electronic signature contained on the documents filed with the Bankruptcy Court has the same effect as if it were my original signature on those documents; and

6. **[corporate and partnership debtors only]** I have been authorized to file this petition on behalf of the debtor.

Date: **July 29, 2019**

X _/s/ Sandra Cormican_     X _____
Signature of Debtor1 or Authorized             Signature of Debtor 2
Representative

**Sandra Cormican**
Printed Name of Debtor 1 or              Printed Name of Debtor 2
Authorized Representative